The next case on our call this morning is Agenda Number 3, Case Number 105-767, People of the State of Illinois v. Richard Hodges. Counsel may proceed. Thank you. My name is Patrick Cassidy. I represent the appellant, Richard Hodges. Your Honor, the only question before you today is whether Mr. Hodges' pro se petition should advance to the second stage of post-conviction proceedings. The Post-Conviction Hearing Act instructs the trial court to, within 90 days of a petition's docketing and filing, to determine simply whether that petition's claims are frivolous or patently without merit. And under that standard, this is not a hard case. Mr. Hodges has made serious allegations of his attorney's errors, errors that bore directly on the issues the jury was required to resolve. Mr. Hodges claimed that he acted in self-defense at trial, saying that he came under fire from the decedent and that he shot at the decedent only because he believed the decedent was armed and shooting at him. And accordingly, this jury was given a self-defense instruction as well as a secondary murder instruction. However, no other witness corroborated Mr. Hodges' testimony, and no gun was recovered from the decedent by the police. Now, in his pro se petition, Mr. Hodges has brought forth three affidavits from witnesses who would say, swear that, in fact, the decedent was armed, just as he had testified at trial. And Mr. Hodges has further explained these claims. Those affidavits were available at the first stage as well? These affidavits were included in his – this is a first stage petition that includes these three affidavits. He's also, in his petition, as required by the Act, explained why he believes that there is support for his allegation, that there's more shell casings recovered from the scene than introduced at trial. If it goes back to the second stage proceeding, what do you expect that would come out that has not already been considered in the first stage? Well, a second stage proceeding will allow trial counsel to further substantiate his allegations. These affidavits – well, trial counsel can, first and foremost, investigate his allegation about the shell casings. Mr. Hodges has, from his being in prison, he's talked to the ME's office twice. They've told him they have a report. According to him, they told him that they have a report that indicates additional shell casings, and he's requested a court order for that report, but that was denied. So one thing that could happen prior to second stage review, which, again, would be a higher burden for Mr. Hodges to hurdle, but at that point, that allegation could be further fleshed out prior to that. So that would be one thing that could happen if a counsel were appointed. But at this stage – The number of shell casings, the difference in the type of the shell casings were not known during the first stage? Did not come out during the first stage? I mean, Mr. Hodges alleges at the first stage that there were additional shell casings, but he was unable to provide the document that he believes supports that allegation because, as I've said, he requested a court order for that document. So that allegation, while within the acts, you know, while he's done what the act requires, which is explain why he hasn't shown that support, he would still need to eventually show that support at the second stage by either getting that document or some other evidence. But at this stage – What was the basis for the court denying securing the document? Yeah, that's – all he has attached to his petition, I believe he's attached his request for a court order that he filed. I don't think he attached the basis for denial. I mean, but he supported his – you know, he's explained that he's tried to get this. But I don't know the basis, Your Honor, of why that happened. Excuse me. The witnesses here did not see the shooting. That's correct, Your Honor. But two of these affiants state that they were with the decedent when they arrived at the gas station and that they knew that the decedent was armed. And all three of the affiants said that right after the shooting they saw someone take a gun from near the decedent's body. So while they didn't see the actual shooting, they corroborate Mr. Hodges' otherwise uncorroborated testimony trial that the decedent was, in fact, armed, which would have been enormously helpful to a case in which he claimed that he was acting in self-defense and in which the jury was instructed on self-defense and secondary murder. But you're correct that they didn't actually see the shooting. But they would have provided important corroborative evidence. But they did that at the first – that was presented at the first stage as well, wasn't it? I'm afraid I don't – I'm afraid I'm not understanding. I mean, we are at the first stage. That's all right. Go ahead. I mean, this – I mean – Are we looking, counsel, in this instance to the nature of the facts that are alleged in the pro se petition? Ultimately, isn't that what the defendant has to do to even get to it just? He has to make allegations of constitutional error and provide some support for that. But within the context of alleged facts, isn't that correct? I believe that's correct. He has to – right, so he's – the facts here would be, among other things, the three affidavits that he's – Sorry. The facts here – the factual allegations here are such like the three affidavits from the witnesses. I believe that would be a factual allegation that is well supported. But those affidavits verify that they were not witnesses to the crime. They were – but they provide – they weren't – they were there right before the – And all three saw someone take a gun away from the decedent. That would establish that the decedent was armed during the incident. And perhaps just to give you an idea of how important that would be. Before you get there, Mr. Caskey, is it your argument that in – again, kind of dovetailing off of what Justice Fitzgerald said, is it the facts of this case that we're interested in? Are we interested in the fact that the prejudice prong of Strickland, even with what's been provided at the first stage, would have been met? Or is your argument a broader one that on post-conviction at the first stage, summary dismissal stage, that the prejudice prong of Strickland cannot be met – or cannot be looked at? Well, we would – thank you, Your Honor. I would like to clarify. We're not saying that you cannot look at the prejudice prong of Strickland. One thing we know is obviously the petitioner under the Act isn't instructed to argue, I was prejudiced under Strickland, although this petitioner did just that. What we object to is being required to, at the first stage where you're acting pro se, being required to allege facts which, if true, would establish prejudice. Because that is the standard at second stage review. So you are making a broader argument, then, because at the summary stage, the court is allowed to review the record, right? Absolutely, Your Honor. And if they review the record and find that the evidence is so overwhelming that no contrary verdict could stand, hence no prejudice, you're saying that really the court can't consider prejudice at the first stage? If they don't have to show facts that would prove prejudice in an effective assistance claim, I mean, it seems to be that you're saying that they can't look at prejudice. The court can't look at prejudice. I am absolutely not saying that. What I am saying is that to look at prejudice, though, you look at it in the context of whether the allegation is frivolous or patently without merit. That's the ethical standard at first stage. So in your example, can a trial court look at prejudice and say, well, I think, in my view, this would not have changed the outcome of the trial? That's not just looking at prejudice. That's actually reaching the merits of prejudice. That's where I have to stop you. But the Act does allow at the summary stage for the court to look at the record. Absolutely. So they look at the record, and they say, boy, this evidence of guilt is overwhelming. I don't care what this pro se defendant comes up with with respect to the prejudice prong of Strickland. He's got an ineffective assistance argument here. No contrary verdict can stand. I don't care what he says. It's overwhelming. Your Honor, what we object to about that is that is until he's reached the ultimate merit, before the pro se petitioner has had benefit of counsel. What the Act instructs the trial judge to do is not to determine the merits, but to say whether it's frivolous or patently without merit. Patently is in the Act for a reason. It means is it obvious? Is it obviously? No doubt about it. Whatever error that's been alleged. One more time, and then I'm going to let you go. It allows the trial court to look at the record to indicate whether there is a gist, right? Correct. And whether that gist standard has been met. Correct. Okay. We wouldn't be having this discussion if it was something outside of ineffective assistance of counsel. But since we're talking about ineffective assistance of counsel, and that's why I have to go back to, I believe, you're arguing specifically as to all ineffective assistance of counsel claims, that the gist would seem to have to meet the two prongs of Strickland. That's what we're going to hear here. The gist of an ineffective assistance of counsel claim includes whether or not there's prejudice to the defendant. And if the court can take a look at the record and say no prejudice, they can dismiss the petition summarily. Okay. Let me respond with two things. If this court is interpreting patently without merit to mean without merit, then I don't see how that's consistent with the legislature's language. It must mean something else. And I think here's an example of it doesn't mean that the petitioner doesn't have to put some facts about how the error was related to the issues at trial. Mr. Hodges has done that. His trial counsel's errors aren't about things that had nothing to do with what the jury was deliberating on. You know, these FDNs put a gun in the decedent's hands. And here's how that would have affected. Here's how he has alleged facts that impact the jury's verdict. The prosecutor argued here to reject self-defense and secondary murder, and he repeatedly insisted in arguing that the decedent was armed, saying, the evidence shows he was unarmed. There was no weapon recovered from Christopher Pitts. Christopher Pitts had no weapon. He didn't have a weapon on him. He never had a gun, never fired a shot, unarmed. And then in rebuttal, he tells the jury, you can't accept Hodges' self-defense and secondary murder because Hodges has to see a gun. He didn't see a gun. He saw nothing. Now, as a pro se petitioner, first age, he's come up and said, hey, these three FDNs would have put a gun in the decedent's hands. And so he's alleged facts that are directly relevant to what the jury was forced to decide here. So my answer to you, Your Honor, would be that he has alleged facts on which you can see a possible claim of prejudice. This is not a case where the attorney's error is, like, so de minimis that it couldn't possibly have affected the trial's outcome. This is a case where the attorney's error was about the core issues of the heart of the defense case, an uncorroborated case of self-defense and secondary murder, and yet, you know, these allegations say if his attorney had properly done his job, we'd have three witnesses on the stand saying that the decedent was armed and that there was evidence of additional shell casings, meaning evidence of additional shooters. So we're not asking for a lower standard here. We're saying that that's the gist of an ineffectiveness claim. Now, when the first ---- I lied to you. I have another one for you. But what are we looking at, then, as this Court? Are we looking at the trial judge as to whether the trial judge made a mistake in looking at the total record, comparing it with the first-stage petition that was filed by the defendant, and indicating that even taking all the facts as true, as alleged by the defendant, there is still not the gist of an ineffective assistance of counsel claim? Because I still think taking all that as true, the trial judge says, that prejudice can't be met. Or are you saying that once a pro se petitioner files a first-stage post-conviction petition and alleges with affidavits something that has, like, the gist of a prejudice prong, that the judge is precluded from looking at the record and deciding whether or not the second prong of Strickland has been met? Well, he's not precluded from looking at the record. But that doesn't mean he can decide. Are we looking at whether or not the trial judge abused his discretion in finding that Strickland couldn't be met, or are we looking at whether the trial judge abused his discretion in dismissing at the first stage, just based on the fact that you're saying a gist of an ineffective assistance claim was put together? Reviews de novo were saying that he erred in finding that it wasn't a gist. But then he went on to find that prejudice couldn't be met, which couldn't be substantiated, which we argue is a question for second-stage review, not first-stage. And I like the first-stage review comes from the ax language, frivolous, patently without merit. This court explained what those terms meant in Beauclair and in Blair. It said that frivolous is something that's not even arguable, and patently without merit is something that's obviously or plainly meritless. And accordingly, in Blair, it said that it's something that has no basis in law and fact and is obviously without legal significance. And our argument is that applying that language and the frivolous and patently without merit standard, Mr. Hodges' petition passes that standard. He has a solid basis in both law and fact. In fact, as I said, he has these affidavits that put a gun in the decedent's hand, and he has explained why he thinks there's support for his other allegations, that there's more shell cases at the scene. And there's also a solid legal basis here. There's no strategic justification that I'm aware of that would allow a trial attorney not to investigate evidence that would corroborate what is the heart of the defense case and yet is uncorroborated testimony by Mr. Hodges that the decedent was armed. Counsel, maybe you can help me here and articulate for me. This opinion will go back to the trial court we published or other trial courts. Presumably you want us to articulate, test, or instruct trial judges on how they ought to look at these post-conviction petitions in the future. How would you articulate the test that you think a court should apply under the GIST standard? Well, I would go back to these terms obvious and plainly. At the first stage, you're looking at the petition, you're looking at the record, and you can look as we're not arguing that the trial court is limited, is precluded from looking at the record. But you're only looking at it to determine one thing. Is it obvious that there's no merit here? Is it plain? And I would maybe point out this court's decision in People v. Robinson in 2005 where this court addressed a pro se petitioner who claimed that his appellate counsel was ineffective because trial counsel never objected to an alleged hearsay statement. And this court looked at the hearsay statement, the alleged hearsay statement, and this court looked at the record and said, obviously this statement falls, it actually said plainly, this statement falls within a hearsay exception. So there's no error by appellate counsel. So that's a case where it's plain, obvious that there's no merit. In this case, however, it's far from obvious that this evidence wouldn't have impacted the jury's deliberations. I'd like to point out that the jury in this case, two hours into his deliberations, asked him to receive permission to watch the videotape of the defendant's post-arrest statement. And given the evidence at trial where his testimony was uncorroborated, the fact that he didn't mention anyone else shooting in that statement was probably damning evidence against him. But consider for a moment how different the jurors' perspective of that video would have been if they had just heard three witnesses say that, in fact, the decedent was armed, just as Mr. Hodges testified, and if they had heard evidence that there were additional shooters. That would have completely changed their picture of this video statement and would have raised or enhanced their view of Mr. Trial Court's in-court testimony. So can it be said that it obviously would have had no impact on deliberations? That's the test we're looking for, and we would say, no, it's not obvious, so it should proceed to the second stage. And bear in mind that the second stage, Mr. Hodges is going to have to pass a more strict threshold, but at that point he will have had an attorney's assistance in meeting that higher threshold. Here at the first stage- Just for a moment, back to Justice Thomas's concerns about doing this in light of overwhelming evidence. In this particular case, the appellate court order observed that it was overwhelming evidence in this case. But the jury in this case didn't have the three witnesses and this other evidence. Would it be overwhelming with that? I mean, the trial judge in this case, he said it didn't support defendant's alibi. I'm not sure what the trial judge was doing exactly, but the overwhelming evidence at trial would have been much less overwhelming if one of the main reasons the State argued to reject self-defense and secondary murder would have been blown out of the water because the decedent was, in fact, armed. Mr. Cassidy, if I understand, and maybe we're plowing old ground again, but if I understand the requirements for Strickland, and may I finish the question? Certainly, Chief Justice. In order to get a reversal on a direct appeal for ineffective assistance of counsel, there must be prejudice shown. That's a constitutional violation. Correct, Your Honor. So in a post-conviction petition, must the defendant, in order to survive first stage, allege not only ineffective assistance but also prejudice? Yes, to allege facts that you could possibly find prejudice. Because there is no gist of a constitutional claim unless the prejudice is alleged. Is that correct? Correct. He doesn't have to demonstrate prejudice, but he has to allege facts where you could say there's a possible claim of Strickland here, a gist of a claim. And then at the second stage, he has to allege. So we should look at whether or not there's an allegation of prejudice, that the result would have been different but for the ineffective assistance of counsel. And that allegation is here repeatedly in his petition. We just object to having to prove that allegation at first stage. But then taking it to the next step, if you've alleged it and the trial judge looks at the entire record and says there is no prejudice, then there's no gist. But if he says there is no prejudice, he's determined the merits of the question. He's gone beyond the gist stage and he's at the second stage of review now, where you have to allege facts that, if true, would substantiate the constitutional violation. If there are no other questions. Thank you, counsel. Good morning, Your Honor. Counsel, may it please the Court, my name is Michelle Romaldi Stein. I'm an assistant state's attorney with the Cook County State's Attorney's Office, and I represent the people of the state of Illinois. The defendant's argument is, in fact, premised on four points. Now, counsel just stood here and said that he needed to plead prejudice at the first stage. That's not what his brief said. That's not what the defense bar has been arguing all throughout this state for several years now, since Edwards came out. The first premise in his brief is that you don't need, a pro se petitioner does not need to plead prejudice at the first stage. The second premise is that the merits aren't considered until second stage. The third premise is that the court cannot conduct a detailed examination of the record, but can only dismiss, and I quote from the defendant's reply brief, if there is no possibility that his claims can prevail. And in doing that, the defendant has a sub part, a sub issue, is he has redefined the term frivolous and patently without merit. He has merged the two and says the error has to be obvious. The claim has to be obviously frivolous. Now, I'd like to address that part first. The statute provides that summary dismissal is appropriate if a claim is frivolous or disjunctive, not conjunctive, patently without merit. And this court has defined all three of those terms, frivolous, patently, and merit. And certainly any allegation that is patently is defined as obviously. Any allegation that is obviously, plainly, and clearly without merit is frivolous. But not every frivolous claim is frivolous plainly so. And contrary to what counsel has just argued about Robinson, this court's case of Robinson demonstrates that. Because Robinson involved a claim of ineffective assistance of appellate counsel for counsel's failure to raise on appeal whether or not a hearsay statement was improperly admitted at trial. And so this court queried whether or not this statement might have been admissible as a spontaneous declaration. And it stated in Robinson that in order to determine that, it was necessary to examine the circumstances under which that statement was made, to look to the mindset, the mental and the physical condition of the declarant, to look at the nature under which that statement had been made, and to consider all the facts. Now, after it conducted that detailed review of the evidence and the law, the court said, well, plainly, this statement was admissible under the spontaneous declaration exception. But it wasn't something that was obvious. The court had to conduct a detailed examination. But it was a frivolous claim. The claim of ineffective assistance of appellate counsel was frivolous because the underlying claim had no merit. So we clearly know that the defendant's definition that he uses in this court now of frivolous or patently without merit is not the definition that this court uses. That's number one. We also know that the United States Supreme Court has defined the parameters of a constitutional claim of the deprivation of counsel to include two components, prejudice and deficiency, and they have said that both must be pled in order for there to be a constitutional violation. So the defendant's claim that he does not need to plead any facts demonstrating prejudice, which is what the defense bar has been saying in Illinois for several years now. In fact, he did plead facts that could result in prejudice, would show prejudice to the defense. He claims that he pled those facts. If you look at what the facts of this case are, there is no prejudice. The jury, the trial judge or the jury, I forget which, did not hear the or did not see the affidavits, did not hear any testimony from the three witnesses who indicated that the victim did have, in fact, a gun. Your Honor, first of all, the trial court. Is that true? No, that's not. The trial court did see those affidavits. The trial court saw those affidavits. They were appended to the defendant's petition. The jury did not hear such testimony, and there was no evidentiary hearing where those witnesses testified. But let's look at what those affidavits. The bar or counsel not represented those witnesses could not form the basis of ineffective assistance. Not when you look at the substance of that testimony, not when you look at. What would be the substance of that testimony? Well, for example, the defendant claims two affidavits, one from a person named Marquis Scales, where the record supports that Marquis Scales was in that van that brought the victim to the gas station. Marquis Scales provided a statement to the police shortly after the murder and did not provide any of the information, which his affidavit now includes. Didn't say that he saw someone take a gun from the victim. And was actually. You're saying it's okay for the trial judge to then make judgments regarding what effect that evidence would have if the jury had an opportunity to hear it? Absolutely. Because a claim is frivolous. If the court determines that even if the jury had heard this testimony, it wasn't going to affect. There was no reasonable probability that it would affect the outcome of the trial. To place a gun in the victim's hand when there's a defense of self-defense would not perhaps impact upon the jury's decision? First of all, Your Honor, can I get to the first part of what Marquis Scales and Dante Sanders, yes, they say that they, first of all, no one placed it in the victim's hand. That there was a gun taken from nearby the victim after the shooting. But first of all, both Marquis Scales, who was clearly in the van, and Dante Sanders, who claims he was in the van, but there's no evidence supporting that, both said that they were in the van. The evidence is his affidavit. Correct. But they were in the van when the shooting started. They couldn't see what was happening. They ducked down. It isn't for a jury to decide. Your Honor, if I might, yes, it isn't for a jury to decide because the substance of what they say is that the driver jumped back in the van and left the gas station. So that would have not rebutted the major premise of the defendants. You're arguing facts that the jury perhaps should have heard to decide. No, Your Honor. I'm arguing facts as to whether or not counsel was ineffective in not presenting these witnesses. There were more shells found and different shells found than the defendant. So the defendant says, yes. But I thought there was a report to that effect. The defendant says there's a report to that effect. Was he permitted to secure that report? He claims that he tried to get it from the medical examiner's office, and that was it. But it was a police report. So why would the medical examiner's office? The defendant made no efforts to get it from the police officers or from the police department. He did make an effort, he said, to get it from his attorney who said, the attorney said, I don't have a report like that. Did the attorney indicate that he made an effort to get a report like that? Which attorney, Your Honor? The attorney representing him at trial. No, there's no indication that the attorney representing him at trial ever tried to get a report like that or that he ever had a report like that. And the defendant had two co-defendants. If the attorneys had been given this report as a part of discovery, because that's what the defendant said. My attorney showed me that report on numerous occasions. I know he had it. So if that attorney had it, the defendant could have tried to get it from either of his co-defendants' attorneys. He never tried that either. So what you have here is a case like this Court's recent opinion in Delton. We have the defendant alleging that such a report exists and that these facts would tend to show that there's some basis for his believing that. If that report had gone into evidence, the jury had had a chance to hear testimony from the experts regarding those shell cases, you don't think that could impact upon the finding of guilt or innocence? Your Honor, I think that's making numerous leaps that there is no basis to make here. Well, we could say that about the trial judge's decision. No, the trial judge's decision was based on the evidence that he observed firsthand at the trial, that he heard the witnesses, that he saw their testimony. That's what the trial judge's decision was based on. Is your point, Ms. Grimaldi-Stein, that even looking at that, what Justice Freeman's talking about, the affidavits, the trial court could look at the fact that the defendant said he chased the victim, that there were six shots in the victim's back, and there's a self-defense defense being asserted, and take all that and look at that and say that the prejudice prong couldn't be met? Even taking as true everything in the affidavits, the other testimony would negate any prejudice here? That is exactly what the trial court found. That is exactly what the appellate court found. That even if these witnesses had testified, that even if the evidence of these other shell casings had been presented, there was nothing that was going to change the fact that the defendant, by his own admission, was part of the instigating, he instigated that attack with his cousin, with his nephew, Tony Eck, that he joined in the chase of the victim when there was no threat to him or his nephews. What he said is the altercation starts because Tony Eck throws a bottle at the victim, and he's a little worried, he says at trial, he's worried that the victim's companions might do something, so he fires a warning shot into the air. And what effect does that have? Exactly what he wants. The victim takes off running one way, the two other people take off running the other way, and the van pulls out of the station. That's what his two affiants have said. The van pulls out of the station when the shooting started, and now you have a defendant that could he reasonably believe that it was necessary for him now to take his gun and to join in the pursuit of the victim that's trying to get away? His cousin, his nephew, is firing shots for shell casings found along the north side of that gas station. There's one on the north side from the defendant's gun. The victim is now running on the east side of the gas station, and there's another 10-millimeter shell casing from Tony Eck's gun on that side. There are three 9-millimeter shell casings from the defendant's gun along the southeast side of the station, and the victim is found one-half to three-quarters of a block away. This court can look at the photographs that the record has been supplemented with. He's lying face down in the gutter. He's got six bullet holes in his body. All the entry wounds are to the back. The medical examiner testified that three of those wounds would have rendered the victim unconscious and were fatal, so they had to be inflicted upon this victim at that point where he fell. And the shell casings, the seven 9-millimeter shell casings, just like the defendant's 9-millimeter gun, are found all around the back of the victim's body. So what does it show? That the defendant, after the victim fell, stood over this victim and unloaded a gun into his head and upper back. There's no way that that could possibly be either self-defense or unreasonable belief that self-defense was necessary. I want to go into a little something I went into with Mr. Cassidy. It's clear that your position is that there was no error in a finding of no prejudice based on a review of the record vis-à-vis the post-conviction petition. But getting back to your original issue and something I explored with Mr. Cassidy, you're saying for seven years the Defense Bar would have us not even make that determination, right, that the trial court would be precluded from making the determination in which you're saying there's no error, namely, a review of the record to determine whether there is prejudice. Isn't that really the heart of the issue here? I think the way they've done it, Your Honor, is they've taken this court's opinion in Edwards and they say Edwards defines the gist of a claim as something less than a fully pled claim. That means I don't have to plead, the pro se defendant doesn't have to plead prejudice. So any time a court, what they try to do is hamstring the court's ability to examine prejudice by inserting this theory that I don't even need to plead it at this point. If I don't need to plead it, you certainly can't examine the record for it. But that's not what the Edwards court held. The Edwards court talked about that prejudice was presumed in that specific case because of the magnitude of the right that was lost. The Edwards court found that counsel's actions had deprived the defendant of an appeal altogether. And because an entire appeal had been deprived, prejudice was presumed. Now the confusion has arisen because of the part of the Edwards opinion in the beginning of this opinion when the court rejected blanketly the sufficient facts test. And it's on this basis that the defense bar now is saying I don't need to plead prejudice. You can't consider prejudice at the first stage. And the court should not be concerned with the merits of a petition until second stage. Now there are a number of problems with that proposition and I would like to get into them briefly. First of all, the very language of the act is that first stage is when the merits of a petition are to be examined. The court is required by statute to determine if that pleading states a valid cause of action under the act. In order to state a valid cause of action under the act, you have to state a constitutional violation. In order to state a constitutional violation, you have to, when you're claiming ineffective assistance of trial counsel, plead both facts demonstrating both deficiency and prejudice. Now, contrary to the defendant's claim, this does not mean that a defendant has to plead a legal theory. This doesn't collapse first and second stage. It doesn't render the counsel's appointment at second stage meaningless. And it doesn't impose a more onerous burden on this type of petitioner than any other post-conviction petitioner. All the defendant has to do is tell a story, a story that says this is what happened when we were preparing for my trial, this is what happened during my trial, this is why this went wrong at my trial, and if he hadn't done this, this would have happened. So clearly he is required to plead facts demonstrating prejudice. The court is not required to allow a petition which simply just lists a laundry list. He made this mistake, he made this mistake, he made this mistake, and here I have people who are willing to attest to that. That doesn't state the gist of a constitutional claim. If this court accepted that, it would absolutely eviscerate the presumption of prejudice which the U.S. Supreme Court in Strickland says has to be the starting point of any ineffectiveness inquiry. If you get to second stage just by saying my attorney made these mistakes, you not only don't have a strong presumption of counsel's competence, you don't have any presumption of counsel's competence. And if a court can only dismiss if there is absolutely no way that counsel's errors had any impact on the outcome of the trial, which is the standard on page 7 of the defendant's reply brief, he's asking for this court to totally eviscerate that presumption. This court's opinion in People v. Blair addresses each and every one of these points and demonstrates the problems in each one of the defendant's premises. In Blair, the defense argued that at first stage a court should only examine the petition to see if it states the gist of a claim. It should only ask, might this claim have merit? It shouldn't review the record to see whether the defendant's claim was forfeited or barred by res judicata. In Blair, the defendant asserted that the Act doesn't mention res judicata or forfeiture, so it wasn't within the parameters of summary dismissal. That it was beyond the ken of a pro se defendant to adequately address that, and that with proper legal assistance, an attorney might be able to demonstrate that you should relax the bar of forfeiture or that the issue should be considered despite the fact that it had been previously litigated. So the defendant argued these were not proper considerations at first stage. This court recognized that first stage is designed to judge a petition's substantive merit. That the legislature intended summary dismissal to weed out petitions that had no merit. That it might have merit on its face, but for other reasons not be meritorious. And because the summary dismissal provision does not limit or qualify the type of conclusion of law a court can make to restrict it just to whether or not the petition states a gist, changes what the legislature's intention was, forces a court to proceed where the claim cannot prevail, and wastes judicial resources. Now, if a claim that's just barred by waiver or forfeiture or res judicata is frivolous under this court's standards, a claim that might be able to be refined so as to allow consideration, a claim where the court has said no matter what happens, he can never prevail on it because this evidence could never demonstrate prejudice, that claim is even more frivolous. Thank you counsel, thank you your honor. Counsel you may proceed. Consider what the prosecutor argued to the jury. Why would he have repeated so many times that the decedent was unarmed? It was so clear to the jurors. Why were the jurors looking at a videotape statement of Hodges that this evidence would have corroborated if this evidence had no impact on this jury's verdict? That's the question here of whether he's stated some facts that you could find possible prejudice. I'm not arguing on behalf of the defense bar. I'm arguing on behalf of Mr. Hodges, a pro se petitioner who, even though he's in jail, he's got three affidavits and he's requested court orders, he's made calls to the ME's office, he's talked to them, he's directed field counsels to talk to them to try to get this report. He's been unable to do so. We're at the first stage of proceedings, a low threshold. These errors concern his entire defense case, self-defense, second degree murder. What did he believe actually, reasonably or otherwise? And to say that these allegations don't pass this threshold because the trial judge believes it wouldn't have made a difference, that's inconsistent with what the jury was considering and how the case presented its own case to the jury. Moreover, I would note that the trial judge here disregarded these affidavits because he thought they were of slight credibility. That's a clear error. This court has said time and again that credibility determinations are not to be made of affidavits at the first stage. This court has also repeatedly said that a petition should be liberally construed in favor of the petitioner in the light of the record. As well, in Edwards, the concurrence, this court, the concurrence noted that if there's doubt, if there's any doubt, then the petition should proceed to second stage where two things. One, the record on appeal from that will be much better because then the petitioner will have had an attorney to make these claims into the appropriate legal form, which is the language of attorneys. That will help an appellate court, a reviewing court, make these determinations. As to pleading prejudice, obviously the Act doesn't instruct a petitioner to plead prejudice under Strickland because they tell them to omit any legal citation or argument. But of course, they tell them to set forth the specific facts that you believe led to a constitutional violation. Mr. Hodges did that here, saying, I plead, you know, I argued self-defense at trial and my attorney didn't investigate witnesses that would have put it on the decedent's hand. And he didn't investigate evidence that indicated that there were other shooters. Note that at trial, the assumption that all these 9mm came from Mr. Hodges is because there were no other, there was no evidence of other shooters, other 9mm. That's an assumption based on evidence. They all came from the same gun. And we assume that's Hodges because he's the only one that admitted to having a 9mm. But if there's other people out there, the picture of events changes. Most importantly, though, the gun in the decedent's hand. I mean, it goes directly to Mr. Hodges' claim that he believed he was acting in self-defense, even if that belief was unreasonable. The jury was required to acquit a first-degree murder and they found it was unreasonable to return a second-degree murder verdict. The jury then, to have a gun in the decedent's hand would have been extraordinarily helpful. And of course, two applicants say that they knew the gun that their friend had had a gun before the incident. And all three see someone take that gun away right after the incident. Also, Robinson. I don't think I mischaracterized Robinson. I said that this court found that it was an example of something that was obviously meritless. And this court said in Robinson that it was patently without merit. So I think that was a fair characterization. I don't think that can be said in this case. In this case, I think we need to proceed to second-stage review, where the state will have an opportunity to file a motion to dismiss. They can make these arguments then, but the petitioner will have had counsel help prepare the petitioner to meet some of these arguments. And that process will give this order of the appellate court a better record on which to review this case. Is it your argument that if you allege ineffective assistance and if you allege that there was therefore prejudice, that that's enough to get to the second stage without looking at whether or not there in fact was prejudice? No, I'm not making that argument. If the defense bar has made that argument, I'm not making that argument. The argument I am making is that you set forth, like the Act tells you, the facts underlying. And you say, my attorney was ineffective because he did these things. And then the court looks and says, all right, I can see a valid claim of constitutional violation because these were serious errors that could have impacted the jury's deliberations. But you do have to allege that there was prejudice as a prong of Strickland to even get to the constitutional violation, do you not? Well, I don't think you have to put those words, I was prejudiced under Strickland, because the Act tells you not to cite legal authority. But you do have to set forth facts from which you could see the possibility of a Strickland claim. But I think that distinction is important. But in any case, that's what Mr. Hodges did here. He alleged facts and he said that they, without, but for trial counsel's errors, the outcome of the trial would have been different because these facts would have corroborated my claim of self-defense. So that's what we're arguing. We're not arguing in any way that you can just put forth a laundry list of errors and go straight to the second stage. Are you arguing that the trial judge has to take that allegation as true, that but for the errors the outcome would have been different without looking at the allegations and the record? The allegations he has to take as true are the allegations in the affidavits that there was a gun in the decedent's hand and the allegation that Mr. Hodges provided support for, which was that there was additional shell cases. Then he just has to say to himself, is that a frivolous Strickland claim? Or apparently without merit, a Strickland claim? But he doesn't then say, we argue that he doesn't, at the time for determining the ultimate merits of a Strickland claim, of any claim. I'm not talking about the ultimate merits of the, that there will in fact be prejudice shown, which would result in a reversal. I'm just saying, can the trial judge look at the allegations and say, the allegations have merit, and looking at the record, there still is no prejudice. Can he do it at that level? I think he can do that, but he says that to him it's obvious there was no prejudice, or to make an argument that there was prejudice would be frivolous. But I don't think the argument we're making here, that a gun in the decedent's hand would have impacted the jury's deliberation, is something you can say is frivolous, or that it's obviously meritless. What does this mean in your brief, Mr. Cassidy? The act does not authorize the trial court to go further at the first stage, and to summarily dismiss a petition with the allegation that, in the court's opinion, do not have a sufficient legal or factual basis, or enough legal significance. Isn't that saying that the court can't look at the record and determine that ineffective assistance claim, legal claim, is not valid because prejudice isn't met, even in light of these affidavits? No, I was going off of this decision in Blair, where you said that summary dismissal was for claims with no legal basis, no factual basis, and no legal significance. That's the threshold determinant at the first stage. Then, but that's not what, you know, the trial court then can't say, well, there is some legal basis, and some legal significance, and you know what, I'm going to determine that right now. What our argument is, at that point, petitioner needs to be appointed counsel, and then you move to the second stage, where the state can move to dismiss. So that's the point I was trying to make there, that I'm going off of the language of the act, frivolous and patently without merit, patently, or frivolous, not just simply without merit, and I'm going off of Blair, no legal basis, no factual basis, and this court has consistently said, since 1996, low threshold in Galton, 1996, Edwards, 2001, and twice in Delton and Torres last year. Low threshold, limited detail. It's been well established. So, in conclusion, we would ask this court to reverse the judgment, and if there are no further questions, we would ask this court to reverse the judgment. Thank you. Case number 105-767.